UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| EARL THURSTON, | Civil No. 11-144 (DWF/JSM) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Warden B.R. JETT,<br>Captain WHITE,<br>Lieutenant HANSEN,<br>Lieutenant NAUGLE,<br>S.I.A. MILLER, and<br>D.H.O. B. AUTERSON, | |
| Defendants. | |

Plaintiff, a prisoner at the United States Penitentiary in Florence, Colorado, commenced this action by filing a pleading entitled "Complaint for Violation of Civil Rights Under 42 U.S.C. 1983." (Docket No. 1.) Plaintiff did not pay the $350 filing fee required for this action, (see 28 U.S.C. § 1914(a)), but instead he applied for leave to proceed in forma pauperis, ("IFP"). (Docket No. 2.) By order dated January 21, 2011, (Docket No. 3), Plaintiff was advised that his IFP application would not be addressed, and his case would not go forward, until after he paid an initial partial filing fee of $26.24, as required by 28 U.S.C. § 1915(b)(1).

Plaintiff recently paid his initial partial filing fee, (Docket No. 4), and the matter is now before this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons discussed below, the Court finds that Plaintiff's complaint fails to state a cause of action on which relief can be granted. The Court will therefore recommend that this action be summarily dismissed pursuant to 28 U.S.C. § 1915A(b).

I.   **BACKGROUND**

In 2009, Plaintiff was an inmate at the Federal Medical Center in Rochester, Minnesota, ("FMC-Rochester"). In August of that year, a correctional official at FMC-Rochester found a handmade knife hidden in Plaintiff's bed. As a result of that discovery, Plaintiff was charged with "possession of a weapon" in violation of prison rules.

Plaintiff did not deny that the knife was found in his bed, but he claimed that it was not his knife, and he did not put it in his bed. According to Plaintiff, another inmate named Moody candidly admitted to correctional officials that the knife belonged to him, and that he had hidden the knife in Plaintiff's bed. Despite Moody's alleged confession, Plaintiff was found guilty of the alleged disciplinary offense, ("possession of a weapon"), and sanctions were imposed against him. Those sanctions consisted of --

(1)   removal from the general prison population at FMC-Rochester, and placement in segregated confinement for three and a half months; and

(2)   a transfer to a more secure federal prison facility – the United States Penitentiary in Florence, Colorado.

Plaintiff attempted to challenge the outcome of his disciplinary proceedings by using the administrative remedy procedures provided by the federal Bureau or Prisons, ("BOP"). He filed various administrative grievance forms and appeals, but they were either deemed untimely, or rejected on the merits.

Plaintiff is now trying to bring a civil rights action against several BOP employees who allegedly played various roles in Plaintiff's disciplinary proceedings and subsequent administrative appeals. He alleges that he did not receive proper notice of the disciplinary charges brought against him, that he is actually innocent of the charges, and that his

various appeals were wrongly denied.

Plaintiff's complaint does not explicitly identify the legal basis for his lawsuit against the named Defendants. It can reasonably be inferred, however, that Plaintiff is claiming that Defendants violated his constitutional right to due process. (The Court cannot conceive of any other possible legal basis for Plaintiff's current lawsuit.) Plaintiff is seeking money damages from each of the named Defendants to compensate him for their alleged violations of his civil rights.

## II.     DISCUSSION

Because Plaintiff is a prisoner who is seeking redress from government employees, his pleading is subject to preliminary "screening" pursuant to 28 U.S.C. § 1915A. That statute, which is part of the Prison Litigation Reform Act of 1995, ("the PLRA"), requires federal courts to screen the pleadings in every civil action brought by a prisoner against governmental entities and/or employees "before docketing, if feasible or, in any event, as soon as practicable after docketing." 28 U.S.C. § 1915A(a). The Court must determine which aspects of the pleading are actionable and should be allowed to proceed. If the pleading fails to state a legally cognizable claim, the action must be dismissed. 28 U.S.C. § 1915A(b)(1).

To state an actionable claim for relief, a plaintiff must allege a set of specific historical facts, which, if proven true, would entitle the plaintiff to some redress against the named defendant(s) under some cognizable legal theory. See Martin v. Aubuchon, 623 F.2d 1282, 1286 (8th Cir. 1980) (although federal courts must "view pro se pleadings liberally, such pleadings may not be merely conclusory: the complaint must allege facts, which if true, state a claim as a matter of law"). "While legal conclusions can provide the

framework of a complaint, they must be supported by factual allegations." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1950 (2009). A complaint fails to state a cause of action if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). The facts supporting a plaintiff's claims must be clearly alleged. Federal courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint." Stone v. Harry, 364 F.3d 912, 915 (8th Cir. 2004).

To state an actionable civil rights due process claim, as Plaintiff evidently is attempting to do here, a claimant must allege a set of facts showing that he was deprived of a constitutionally protected interest in life, liberty or property, without being afforded adequate procedural protections. Ragan v. Lynch, 113 F.3d 875, 876 (8th Cir. 1997) ("[a] due process claim is cognizable only if there is a recognized liberty or property interest at stake"); Orr v. Larkins, 610 F.3d 1032, 1034 (8th Cir. 2010) (per curiam) ("'[i]n order to prevail on a Fourteenth Amendment due process claim, [the plaintiff] must first demonstrate that he was deprived of life, liberty, or property by government action'") (quoting Phillips v. Norris, 320 F.3d 844, 846 (8th Cir.2003)). Plaintiff obviously believes he has a constitutionally protected liberty interest in remaining in the general prison population, and remaining in a particular prison facility, (i.e., FMC-Rochester); and he obviously believes that he could not be deprived of those interests without being granted the benefits of due process.

However, in prisoner cases, a constitutionally protected liberty interest will be found, and the protections of due process will therefore come into play, only when the prisoner has shown the type of unusual hardship, or dramatic departure from ordinary prison life, that

4

is contemplated in Sandin v. Conner, 515 U.S. 472 (1995).  In Sandin, the Supreme Court held that a prisoner cannot sustain a due process claim unless he can show that he suffered an "atypical and significant hardship... in relation to the ordinary incidents of prison life."  Id. at 484.  See also Orr, 610 F.3d at 1034 ("[t]o show he was deprived of a protected liberty interest, [a prisoner] must identify conditions that impose 'atypical or significant hardship ... in relation to the ordinary incidents of prison life'") (quoting Sandin, 515 U.S. at 484).  In Moorman v. Thalacker, 83 F.3d 970, 972 (8th Cir. 1996), the Court of Appeals interpreted Sandin to mean that prisoner due process rights are implicated only when there have been "deprivations which work such major disruptions in a prisoner's environment and life that they present dramatic departures from the basic conditions and ordinary incidents of prison sentences."  (Emphasis added.)

    In this case, Plaintiff has not pleaded an actionable due process claim, because he has not alleged any facts showing the kind of atypical prison conditions that Sandin requires.  It is well settled that, for due process purposes, assignment to segregated confinement is considered to be a normal part of prison life.  Therefore, limited periods of segregated confinement are not considered to be an "atypical and significant hardship" that can give rise to a protected liberty interest.  The Eighth Circuit has repeatedly held that "a demotion to segregation, even without cause, is not itself an atypical and significant hardship'" that implicates a protected liberty interest.  Orr, 610 F.3d at 1034, quoting Phillips, 320 F.3d at 847 (emphasis added).  See also Portley-el v. Brill, 288 F.3d 1063, 1065 (8th Cir. 2002) ("[w]e have consistently held that administrative and disciplinary segregation are not atypical and significant hardships under Sandin").  Because Plaintiff has not shown that he has suffered any atypical and significant hardship that caused him

5

to be deprived of a protected liberty interest, he was not entitled to the procedural benefits of due process before being assigned to segregated confinement. Therefore, Plaintiff has not pleaded an actionable due process claim based on his segregated confinement.

It is also well settled that prisoners do not have a constitutionally protected liberty interest in remaining in any particular prison facility. Federal courts have repeatedly held that unwanted prison transfers are a normal and expectable aspect of prison life, and transfers are <u>not</u> the kind of "atypical and significant hardship" that implicate constitutionally protected liberty interests. <u>Freitas v. Ault</u>, 109 F.3d 1335, 1337 (8th Cir. 1997) (prisoner had no constitutionally protected liberty interest in remaining in a less restrictive prison environment, and he therefore was not entitled to due process before being transferred to a more restrictive institution); <u>Callender v. Sioux City Residential Treatment Facility</u>, 88 F.3d 666, 668-69 (8th Cir. 1996) (prisoner was not entitled to due process before being transferred from a work release facility to far more restrictive housing in a state reformatory); <u>Moorman</u>, 83 F.3d at 971 (due process not required before effecting prisoner's transfer from minimum security facility to maximum security facility). <u>See</u> <u>also</u> <u>Olim v. Wakinekona</u>, 461 U.S. 238, 250 (1983), (prison authorities "may transfer a prisoner 'for whatever reason or for no reason at all'"), quoting <u>Meachum v. Fano</u>, 427 U.S. 215, 228 (1976); <u>Montanye v. Haymes</u>, 427 U.S. 236, 242 2547 (1976) (the Due Process Clause "does not require hearings in connection with transfers whether or not they are the result of the inmate's misbehavior or may be labeled as disciplinary or punitive").

In sum, the factual allegations in Plaintiff's complaint, even if proven true, do not show that he was deprived of any constitutionally protected liberty interest. Segregated confinement and prison transfers are not considered to be the kind of atypical and

significant hardships contemplated by Sandin. Therefore, Plaintiff was not entitled to the benefits of due process before being placed in segregated confinement and transferred to another prison.

## III. CONCLUSION

For the reasons discussed above, the Court concludes that Plaintiff has failed to plead a cause of action on which relief must be granted, and that this case must therefore be dismissed pursuant to 28 U.S.C. § 1915A(b). Because Plaintiff has not stated any viable claim in his complaint, his application for leave to proceed IFP must be denied. See 28 U.S.C. § 1915(e)(2)(B)(ii). Notwithstanding the dismissal of this action, Plaintiff shall remain liable for the unpaid balance of the $350 filing fee.[1] To date, Plaintiff has paid only $27.00, so he still owes $323.00. Prison officials will have to deduct that amount from his prison trust account and pay it to the Clerk of Court in the manner prescribed by 28 U.S.C. § 1915(b)(2). Lastly, the Court will recommend that the dismissal of this action be counted as a "strike" against Plaintiff for purposes of 28 U.S.C. § 1915(g).

---

[1] Under the PLRA, prisoners may be excused from pre-paying the full amount of the applicable filing fee before filing an action. However, 28 U.S.C. § 1915(b) clearly states that prisoners "shall be required to pay the full amount of the filing fee." In other words, prisoners are permitted to file actions without paying the full filing fee in advance, but they still remain liable for the fee. Ashley v. Dilworth, 147 F.3d 715, 716 (8th Cir. 1998) ("[t]he purpose of the [PLRA] was to require all prisoner-litigants to pay filing fees in full, with the only issue being whether the inmate pays the entire filing fee at the initiation of the proceeding or in installments over a period of time"). Nothing in the PLRA suggests that the dismissal of a prisoner's action would extinguish the ultimate obligation to pay the filing fee. See In re Tyler, 110 F.3d 528, 529-30 (8th Cir. 1997) ("the PLRA makes prisoners responsible for their filing fees the moment the prisoner brings a civil action or files an appeal").

**IV.     RECOMMENDATION**

Based upon the above, and upon all the files, records, and proceedings herein,

**IT IS RECOMMENDED** that:

1.     Plaintiff's application for leave to proceed in forma pauperis, (Docket No. 2), be **DENIED**;

2.     This action be summarily **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1);

3.     Plaintiff be required to pay the unpaid balance of the Court filing fee, namely the sum of $323.00, in accordance with 28 U.S.C. § 1915(b)(2); and

4.     The dismissal of this action be counted as a "strike" against Plaintiff for purposes of 28 U.S.C. § 1915(g).


Dated:     March 21, 2011

*s/ Janie S. Mayeron*
JANIE S. MAYERON
United States Magistrate Judge


Under D.Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **April 4, 2011**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under this rule shall be limited to 3500 words. A judge shall make a de novo determination of those portions of the Report to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.